# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| FREDRICK J. WOOLSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:08-CV-270 JVB |
| TI AUTOMOTIVE SYSTEMS, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Fredrick Woolsey, a black male, filed a claim of race and gender discrimination with the EEOC following multiple write-ups that he received at work for failure to abide by the rules of conduct of his employer, Defendant TI Automotive. After Plaintiff's fifth documented violation, Defendant terminated his employment pursuant to its progressive discipline policy. In response, Plaintiff filed a retaliation claim with the EEOC, and ultimately filed a Pro Se Complaint before this Court. The present matter is Defendant's Motion for Summary Judgment (DE 30), filed on February 26, 2010. Defendant gave notice of the motion (DE 35) to Plaintiff on April 12, 2010. Plaintiff has not responded to Defendant's Motion for Summary Judgment.[1]

**A.      Standard of Review**

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[1] While the Plaintiff has not responded to the motion for summary judgment, the Court has reviewed the record in its entirety in determining this case.

matter of law." Fed. R. Civ. P. 56(c). Summary judgment is also appropriate if, after adequate time for discovery, the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The filing party bears the burden of establishing the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the responsibility shifts to the non-moving party to show that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). The opposing party has twenty-eight days to respond to the motion and set forth any material facts which the party believes are at issue and support its claim with reference to "affidavits, depositions and other admissible evidence". 7th Cir. R. 56.1(a).

When deciding the motion for summary judgment, the court will accept the facts presented by the moving party as undisputed, except for those controverted by the opposing party. 7th Cir R. 56.1(b). All facts, however, must be viewed in a light most favorable to the non-moving party and all legitimate inferences must be drawn and all doubts resolved in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986). A "mere . . . scintilla of evidence" will not be sufficient to support the Plaintiff's claim, the court must find "evidence on which the jury could reasonably find for the plaintiff."

*Anderson*, 477 U.S. at 252.

B.  **Background and Facts**

Because Plaintiff did not controvert any material facts by failing to respond to the motion for summary judgment, the Court accepts the facts set forth in Defendant's brief:

Plaintiff was employed by the Defendant, an automotive supplier of molded gas tanks and fuel systems, in Ossian, Indiana. Plaintiff was hired in December1997 as a Quality Technician, performing tests and measurements on the gas tanks produced at the plant to ensure they conform with certain specifications. (Woolsey Dep. at 32:9–10; 66:2–9, June 23, 2009.)[2] Quality Technicians are responsible for documenting which tanks have been tested and recording it on a daily scrap book. (Woolsey Dep. 93:22–94:2.)

In 2004, Plaintiff was promoted to Quality Team Leader (Woolsey Dep. 35:22–25), adding to his usual tasks the responsibility of collecting and ensuring the accuracy of the daily scrap reports completed by the Quality Technicians. (Def.'s Ex. 4.) This includes verifying that all of the bar codes, which are removed when a gas tank has been tested and attached to the back of the daily scrap report, are accounted for on the front of the report. (Def.'s Ex. 4.) If the information on the daily scrap report does not match the bar codes on the reverse side of the report, the report is incomplete. (Woolsey Dep. 145:14–17.) Once the Quality Team Leaders verify the accuracy of the daily scrap report, they input the report and the Quality Technician's report into the Operational Equipment Efficiency ("OEE") computer program. (Woolsey Dep. 95:12–19.) Each Quality Team Leader, including Plaintiff, has been trained to input data into the

---

[2] The Court follows the exhibit numbering system used by the Defendant in the index of exhibits.

OEE. (Woolsey Dep. 111:13–113:2.) Quality Team Leaders are then to sign off on the daily scrap report and place them in a box when the reports are correct and completed. (Woolsey Dep. 146:7–11; Def.'s Ex. 4.)

Julie Meadows, a Data/Document Coordinator for Defendant, audits the information on the reports to ensure it was input accurately into the OEE. (Def.'s Ex 3.) When Julie Meadows discovers errors, she notifies Faye Moser, a Prototype/Laboratory Services Manager, who addresses the error with the appropriate Quality Team Leader. (Woolsey Dep. 98:15–99:4.)

Defendant's Employee Handbook contains a comprehensive Equal Employment Opportunity & Anti-Harassment Policy, of which Plaintiff admits he was aware. (Def.'s Ex. 1; Woosley Dep. at 53:7–55:1.) Under the Progressive Corrective Action Guidelines, Defendant uses progressive discipline when handling employees who violate more than one rule within a period of eighteen months. (Def.'s Ex 1.) An employee receives a verbal (documented) warning for the first violation, a written warning for the second and third violations, and suspension or discharge for the fourth violation. (Def's Ex. 1.) Plaintiff admits that he was aware of the Progressive Correction Action Guidelines. (Woolsey Dep. at 55:12–15.) He also concedes that he understood that any violation of any rule of conduct within an eighteen month period would result in progressive discipline. (Woolsey Dep. at 56:3–11.)

In 2006, Plaintiff began reporting to Ms. Moser. (Woolsey Dep. 86:1-10.) Plaintiff asserts that, in April 2007, Ms. Moser called him to her office and yelled at him saying "If you can't do your fucking job, you don't need to be a Team Leader" because of an error in testing that was actually the responsibility of a coworker named Violet. (Woolsey Dep. 88:9–89:8.) He admits that Ms. Moser called back three to four times to apologize but he would not talk to her.

4

(Woolsey Dep. 89:10–16.)

On August 10, 2007, Plaintiff receive a verbal warning from Ms. Moser for not completing his daily scrap report and for turning it in a day late. (Def.'s Ex. 7.) Ms. Moser noted in the Employee Counseling Report that Plaintiff had been warned before that his paperwork was inaccurate and that failure to improve would result in further disciplinary action. (Def.'s Ex. 7.) Plaintiff signed the warning, indicating that he agreed with it. This warning was similar in nature to one Plaintiff received from his previous supervisor, Dan Gardner, in June 2004. (Def.'s Ex. 5.)

On August 21, 2007, during a random safety audit, Plaintiff was observed working without eye protection, which resulted in Human Resources Manager Paul Gauger instructing Ms. Moser to issue Plaintiff his first written disciplinary warning. (Woolsey Dep. 104:5–24.) Plaintiff insists that there was no policy to wear eye protection except when operating machinery and he was not operating machinery. (Woolsey Dep. 109: 20–24.)

On January 7, 2008, Ms. Moser issued a second written warning to Plaintiff, following Ms. Meadows' report of the error, for turning in an incomplete scrap report on January 3, 2008. (Def.'s Ex. 9; Woolsey Dep. 180: 9–12.) Plaintiff admits that scrap report did not accurately reflect the number of bar codes on the back of the report and that the proper information was not put in the total scrap column. (Woolsey Dep. 113:12–114:19.) Plaintiff contends that sometimes the employees were told to prioritize certain tasks, even if it meant neglecting others, and that there were multiple occasions when scrap reports were not submitted. (Woolsey Dep. 100:14–101:2.)

Plaintiff filed a Charge of Discrimination with the EEOC on January 7, 2008, alleging

that he was treated less favorably and written-up more frequently than the other Quality Team Leaders because of his race and sex starting in October 1, 2006, through the date of filing. (Def.'s Ex. 12.)

On January 8, 2008, Ms. Moser gave Plaintiff a third written warning (fourth offense) for another submission of an incomplete daily scrap report. (Def.'s Ex. 1.) Even though under the progressive discipline policy his fourth violation was grounds for employment termination, Plaintiff retained his position. (Def.'s Ex. 1.)

On February 28, 2008, Ms. Meadows discovered and reported to Ms. Moser that the Quality Team Leader for the first shift, Plaintiff, had input an incorrect report into the OEE the day prior. (Def.'s Ex. 11.) Ms. Moser forwarded the information to Mr. Gauger and Bob Stacey, the Quality Department Manager. (Def.'s Ex. 11.) Mr. Gauger and Mr. Stacey jointly decided to terminate Plaintiff's employment pursuant to the Company's progressive discipline policy unless he had a sufficient explanation for the error. (Def.'s Ex. 8, Gauger Decl. 2.) Ms. Moser escorted Plaintiff to Mr. Gauger's office during which time Plaintiff alleges she said, "I told you not to fuck with me." (Woolsey Dep. 164:25–165:2.) Plaintiff admits, however, that he did not inquire what she meant by the remark and Ms. Moser never mentioned the Charge of Discrimination. (Woolsey Dep. 165:14–25.)

Plaintiff met with Mr. Gauger and Mr. Stacey later that day and was informed that he was being terminated for poor performance. (Def.'s Ex. 8, Gauger Decl. 2.) Upon request, Mr. Gauger showed Plaintiff the OEE printout of his latest error, and Plaintiff insisted that the computer was at fault. (Def.'s Ex. 8, Gauger Decl. 2.) Mr. Gauger agreed to look into Plaintiff's complaint, but suspended him in the interim. (Def.'s Ex. 8, Gauger Decl. 2.) After speaking with

6

Gerald Brown, who was responsible for the plant's I.T. system, and Ms. Moser, both of whom confirmed that nothing was wrong with the system, and after considering that no other employee had made a complaint about the system, Mr. Gauger decided to terminate Plaintiff. (Def.'s Ex. 8, Gauger Decl. 3.) Plaintiff was informed of the findings and terminated on February 29, 2008. (Def.'s Ex. 8, Gauger Decl. 3.)

Under Mr. Gauger, seven other employees of Defendant have been terminated pursuant to the progressive discipline policy. (Def.'s Ex. 8, Gauger Decl. 4.) All of them were Caucasian and three were female. (Def.'s Ex. 8, Gauger Decl. 4.) One of Plaintiff's fellow Quality Team Leader's, Margaret Winebrunner, a Caucasian female, has also received three disciplinary write-ups for input errors similar to the infractions committed by Plaintiff. (Def.'s Ex. 8, Gauger Decl. 3.) Plaintiff contends that another Quality Team Leader, Ms. Rugles, committed errors at least three times which he reported to Ms. Moser, although he admits no knowledge of what occurred after his report (Woolsey Dep. 196:2–198:11.)

Plaintiff admits that all the reports for which he received write-ups were, in fact, incomplete. (Woolsey Dep. 150:22–151:3.) He admits that all the conduct for which he was disciplined was supported by paperwork. (Woolsey Dep. 206:20–25.) Furthermore, he agrees that his termination was procedurally consistent with the Progressive Correction Action Guidelines. (Woolsey Dep 173:25–174:16.) He also admits that he has no evidence that Gauger did not, in fact, believe the computer system was functioning properly. (Woolsey Dep. 173:14–17.) Finally, he concedes that he has no evidence that Ms. Meadows, Mr. Gauger, Mr. Stacey, or Ms. Moser were predisposed to discriminate against African-Americans or males. (Woolsey Dep. 159:13–18, 175:10–23, 212:13–20.)

On November 12, 2008, Plaintiff filed an Employment Discrimination Complaint in this Court. Plaintiff also claims that he was discharged as retaliation for his Charge of Discrimination with the EEOC. Plaintiff admits that Mr. Gauger never mentioned the Charge and that Mr. Stacey did not retaliate against him. (Woolsey Dep. 176:25–177:5, 178:17–19.) Furthermore, he admits that he has no proof that Mr. Gauger retaliated against him. (Woolsey Dep. 220:10–14.) Plaintiff asserts that he told Mr. Stacey that Ms. Moser had discriminated against him, but he never told Mr. Gauger or Mr. Stacey about his filing with the EEOC. (Woolsey Dep. 177:20–178). Mr. Gauger insists that he never told Ms. Moser about the Charge. (Def.'s Ex. 8, Gauger Decl. 4.)

**C.     Analysis**

**(1)     *Discrimination on basis of race and sex***

Under a Title VII claim, a plaintiff can defeat summary judgment by either the direct or indirect method of proof. *Egonmwan v. Cook County Sherif's Dept.*, 602 F.3d 845, 849–50 (7th Cir. 2010); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To prove discrimination under the direct method, "a plaintiff must provide either direct or circumstantial evidence that supports an inference of intentional discrimination." *Coffman v. Indianapolis Fire Dept.*, 578 F.3d 559, 563 (7th Cir. 2009).

Plaintiff, having failed to file a response, has not provided sufficient direct or circumstantial evidence to meet the burden of proof. Plaintiff offers no facts to support that the write-ups by Ms. Moser stemmed from a discriminatory purpose. Instead, Plaintiff states that he has no evidence that she is predisposed to discriminate against African Americans or male

8

employees. Similarly, Plaintiff offers no evidence that Mr. Gauger and Ms. Meadows, who instructed Ms. Moser to submit at least two of the write-ups, had a discriminatory motive. Because he is unable to show that the disciplinary acts are proximate to his race and gender, Plaintiff fails the direct method.

A plaintiff can also use the indirect method and build a *prima facie* case of discrimination by showing that: "(1) [Plaintiff] is a member of a protected class; (2) his job performance met [Defendant's] legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated individual outside his protected class was treated more favorably." *Egonmwan,* 602 F.3d at 850. After the plaintiff meets the initial burden of establishing discrimination on the basis of gender and race, it becomes the defendant's burden to counter the claims with evidence that there were "legitimate and nondiscriminatory reasons for their actions." *Id*. The plaintiff would then have to demonstrated that the defendant's reasons were pretextual. *Id.*

Plaintiff has failed to meet the initial burden establishing a prima facie case of gender and race discrimination. As a black person, Plaintiff is a member of a protected class. 42 U.S.C. § 2000e–2(a)(1). Plaintiff fails, however, to demonstrate that his job performance met Defendant's reasonable expectations. Instead, Plaintiff admits his failure to abide by Defendant's rules of conduct, and concedes that his supervisors followed the guidelines under the progressive discipline policy. Plaintiff was disciplined five times over six months for documented offenses, four of which pertain to his primary function as a Quality Team Leader.

In addition, Plaintiff has presented no facts demonstrating that he was treated in any manner inconsistent with Defendant's handling of other similarly situated employees. "An

9

employee is similarly situated if they are directly comparable in all material respects." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). A plaintiff must point to a coworker holding the same position, participating in similar misconduct, while not being a member of the same protected class. *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 366 (7th Cir. 2009). According to Plaintiff, Ms. Winebrunner and Ms. Rugles, fellow Quality Team Leaders, are two similarly situated persons who were treated more favorably. Neither of these two employees, however, have committed the required four violations to be subject to termination, and Plaintiff does not present any facts to dispute this. Contrary to Plaintiff's claim of favoritism, Ms. Winebrunner, a Caucasian female, has been written-up three times for the same type of violations for which Plaintiff was disciplined. Plaintiff claims that Ms. Rugles, also a Caucasian female, has not been written-up for her violations, but he offers no evidence that Ms. Moser did not follow up on his reports of Ms. Rugles errors. Additionally, Defendant has demonstrated that all other employees who have been written-up for four violations within the requisite time have been terminated. Of those employees, all were Caucasian and three were female. Because Plaintiff fails to meet even the initial burden, there is no need to further consider Defendant's purpose for their actions.

**(2)** *Retaliation*

Plaintiff also can avoid summary judgment under a Title VII retaliation claim by using either a direct or indirect method of proof. *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 858–59 (7th Cir. 2008). Using the direct method to establish a claim, Plaintiff "must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the

10

employer; and (3) a causal connection between the two." *Id.* at 858. Plaintiff can use both direct and circumstantial evidence in meeting this burden. *Id.*

Plaintiff fares no better under the direct method for retaliation than he did for discrimination. While Plaintiff did file a Charge of Discrimination, a statutorily protected act, Plaintiff does not claim that he told anyone he was going to or had filed with the EEOC. Beyond Mr. Gauger's admission of knowledge, there is no evidence offered that anyone else knew of the claim. Even if Plaintiff had voiced his actions, suspicious timing is not enough to meet the burden. *Id.* at 589. While Plaintiff's termination of employment is an adverse action, it must be causally connected to the protected act. Plaintiff has offered no evidence that such a causal connection exists and, therefore, cannot satisfy the direct method's burden of proof.

Under the indirect method for a retaliation claim, Plaintiff must prove the same elements as in a discrimination claim, except he must demonstrate that he engaged in a protected activity rather than showing membership in a protected class. *Id.* Plaintiff has not met the burden of demonstrating that he satisfied Defendant's performance expectations nor has he showed that his treatment differed from similarly situated employees. While Plaintiff did participate in a protected activity and was fired, he fails to satisfy the rest of the necessary elements for a *prima facie* case.

Because Plaintiff has failed to meet the requirements in either the discrimination or retaliation claims, summary judgment in favor of the Defendant is appropriate.

**D.     Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment (DE 30) is

GRANTED.

SO ORDERED on June 9, 2010.

                                             s/ Joseph S. Van Bokkelen
                                            JOSEPH S. VAN BOKKELEN
                                            UNITED STATES DISTRICT JUDG